IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


TIMOTHY A. PRESLEY                                                    PLAINTIFF

                    v.                        Civil No. 09-2094

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                        DEFENDANT

## MEMORANDUM OPINION

I.       **Factual and Procedural Background**

        Timothy A. Presley ("Plaintiff") appeals from the decision of the Commissioner of the Social

Security Administration ("Commissioner") denying his applications for disability insurance benefits

("DIB") and supplemental security income benefits ("SSI"), pursuant to §§ 216(i) and 223 of Title

II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d), and § 1602 of Title XVI, 42 U.S.C.

§ 1381a, respectively (collectively, "the Act").

        At the time of the alleged onset date, Plaintiff was forty five years of age with a GED.  (Tr.

63, 194, 224).  He has past relevant work as a carpenter.  (Tr. 63).  Plaintiff protectively filed his DIB

and SSI applications on July 3, 2007, alleging a disability onset date of July 6, 2006, due to right

total hip arthroplasty, hepatitis C, and degenerative disc disease.  (Tr. 49-52, 129-35, 194).

        Plaintiff's applications were denied at the initial and reconsideration levels.  (Tr. 69-75, 78-

81).  At Plaintiff's request, an administrative hearing was held on October 17, 2008.  (Tr. 7-48).

Plaintiff was present at this hearing and represented by counsel.  The Administrative Law Judge

("ALJ") rendered an unfavorable decision on April 20, 2009.  (Tr. 53-65).  Subsequently, the

Appeals Council denied Plaintiff's Request for Review on July 13, 2009, thus making the ALJ's

decision the final decision of the Commissioner.  (Tr. 1-3).  Plaintiff now seeks judicial review of that decision.

## II.    **Medical History**

Plaintiff's medical history is positive for a right total hip replacement, degenerative disc disease of the lumbar spine, and hepatitis C.  (Tr. 267).  He also alleges he suffers from fatigue, headaches, depression, and pain in his knees, right shoulder, and right hand.  (Tr. 205, 235, 267).

On July 2, 2004, Plaintiff presented to Carthage General Hospital with complaints of low back pain.  (Tr. 334).  An MRI of his lumbar spine revealed mild degenerative disc changes and slightly prominent annulus at L4-5, but no grossly herniated disc was observed.  *Id.*  Plaintiff was treated at Gordonsville Clinic from October 26, 2005, to October 24, 2006, for reflux and abdominal, right hip and low back pain.  (Tr. 342-48).  He took several pain medications during this time, including Lortab, Vicoprofen, and Combunox.  *Id.*

On July 7, 2006, Plaintiff underwent a right total hip arthroplasty for Legg-Calve-Perthes disease versus congenital hip injury.  (Tr. 274).  Prior to surgery, Plaintiff had taken strong narcotics for several years to help control his right hip pain.  (Tr. 272-78, 344-48).  His pre-surgical x-rays revealed a deformed right femoral head with flattening, but no fracture or dislocation.  (Tr. 290).  Plaintiff received post-operative care from his surgeon, Dr. Roy Terry.  On July 21, 2006, Dr. Terry noted that Plaintiff was "doing much better this week" and the incision was healing nicely.  (Tr. 304).  He also discussed slowly tapering Plaintiff off of pain medication.  (Tr. 304).  On August 18, 2006, Dr. Terry noted a considerable decrease in Plaintiff's hip pain.  (Tr. 301). X-rays of Plaintiff's right hip showed excellent position and alignment of the hardware, with no evidence of loosening.  (Tr. 300).  Dr. Terry determined that there was a quarter to half inch discrepancy in Plaintiff's leg

-2-

length, but explained that a half inch was medically acceptable. (Tr. 301). At this time, Dr. Terry released Plaintiff back to work, but stated he could do no lifting or bending and must alternate sitting and standing for six weeks. *Id.* On October 6, 2006, at his three month follow-up, Plaintiff stated that his hip was much better, but he was having back pain. (Tr. 300). At this point, he was working twenty hours per week. *Id.* Dr. Terry gave Plaintiff a prescription for Vicoprofen and recommended a specialist for his back pain. *Id.* There is no evidence in the record to suggest that Plaintiff met with a specialist concerning his low back pain.

In a Physical Residual Functional Capacity ("RFC") Assessment dated August 12, 2007, Ronald Crow, a DDS consultative physician, reviewed Plaintiff's medical records and determined that he suffered from post-operative right total hip arthroplasty, degenerative disc disease, and hepatitis C. (Tr. 351-58). Based on these limitations, Crow found that Plaintiff could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand, walk, and sit for a total of six hours in an eight-hour workday, and push/pull an unlimited amount (within these boundaries). *Id.* Crow found no postural, manipulative, visual, communicative, or environmental limitations. *Id.* He determined, based on the medical evidence of record, that Plaintiff could perform light work. *Id.*

Plaintiff presented to Summit Medical Center on August 21, 2007, with complaints of chest pain after injuring himself while carrying a television. (Tr. 359-63). The attending physician noted tenderness in the left-sided upper rib area, but Plaintiff's chest x-rays were normal. *Id.* Plaintiff was diagnosed with chest wall pain and given a prescription for Ultram. *Id.*

At the request of DDS, Dr. Michael R. Westbrook examined Plaintiff on January 3, 2008. (Tr. 364-70). Dr. Westbrook noted Plaintiff's complaints of fatigue, right hip pain, knee pain, reflux, back pain, and numbness/tingling in his fingers. (Tr. 366). Upon examination, Plaintiff had full

range of motion in his cervical and lumbar spine and all extremities. (Tr. 367). He had a normal straight-leg raising test. *Id.* He had full flexion in his left hip and 80 out of 100 degrees flexion in his right hip. *Id.* Dr. Westbrook noted no muscle weakness, and gait and coordination were normal. (Tr. 368). X-rays of Plaintiff's lumbar spine and right shoulder were both normal. (Tr. 369). Dr. Westbrook assessed Plaintiff with status post right total hip replacement and hepatitis C. (Tr. 370). Dr. Westbrook did not indicate that Plaintiff suffered from any limitations as a result of his impairments. *Id.*

On April 10, 2008, Plaintiff presented to Sparks Regional Medical Center for acute left knee pain of uncertain cause. (Tr. 378-408). Dr. Balasasikuma Sundaram noted minimal swelling and limited range of motion, but observed no other deformities. (Tr. 383). X-rays revealed an old healed fracture deformity of the proximal diaphysis of the left fibula, but no acute fracture or dislocation was evidenced. (Tr. 399). Plaintiff was given a knee immobilizer and a prescription for Vicoprofen. *Id.*

On April 18, 2008, Plaintiff was treated at Good Samaritan Clinic for low back and left knee pain. (Tr. 375-76). Upon physical examination, Plaintiff had mild diffuse swelling and tenderness about the left knee. (Tr. 376). Plaintiff was diagnosed with degenerative arthritis and given a Medrol dose pack and a prescription for Celebrex. *Id.* A follow-up appointment for lab work was scheduled, but Plaintiff failed to show up for this appointment. (Tr. 375). The record contains no treatment records after this date.

## III.   Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583

-4-

(8th Cir. 2003).  "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion."  *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)).  In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a  medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A).  The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience.  *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a).  If a claimant fails to meet the criteria at any step in the evaluation, the process ends and

-5-

the claimant is deemed not disabled.  *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

**IV.   Discussion**

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 58).  At step two, she determined that Plaintiff suffered from status right total hip arthroplasty and degenerative disc disease of the lumbar spine, both of which were severe impairments.  *Id.*  In making this finding, the ALJ determined that Plaintiff's hepatitis C, knee pain, right shoulder pain, headaches, depression and numbness/tingling of his fingers were non-severe. (Tr. 59-60).  At step three, the ALJ found that Plaintiff's impairments, both individually and in combination, did not rise to the level of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 60).  At step four, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that he could only occasionally balance, bend, stoop, crouch and climb stairs, could never kneel, crawl, climb ladders, ropes, or scaffolds and push/pull with his lower extremities, must alternate sitting and standing, and could tolerate only moderate exposure to workplace hazards.  *Id.*  She found, based on these limitations, that Plaintiff could no longer perform his past relevant work as a carpenter. (Tr. 63).  However, she determined that given Plaintiff's age, education, work experience, and RFC, he could perform representative occupations such as cashier II (of which there are 159,000 jobs in the national economy and 1500 regionally), machine tenderer (of which there are 36,000 jobs in the national economy and 500 regionally), and surveillance systems monitor (of which there are 8,000 jobs in the national economy and 55 regionally). (Tr. 63-64).  Based on this determination, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, at any point between July 6, 2006, and April 20, 2009,

the date of the decision.  (Tr. 64).

Plaintiff contends that the ALJ erred by:(1) finding many of his alleged impairments to be non-severe; (2) improperly determining his RFC; (3) making an insufficient credibility determination; and (4) failing to fully and fairly develop the record as to his alleged impairments. *See* Pl.'s Br. 5-12.

A.  Severe Impairments

Plaintiff contends the ALJ erred at step two of the sequential analysis by failing to find several of his alleged physical impairments to be severe.  *See* Pl.'s Br. 7-9.  For reasons outlined below, we disagree with Plaintiff's assertion and find that substantial evidence supports the ALJ's determination at this stage.

Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment or combination of impairments that is severe.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  A severe impairment is one which significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c).  The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have "no more than a minimal impact on her ability to work." *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir.2001), *citing Nguyen v. Chater,* 75 F.3d 429, 430-31 (8th Cir.1996).  Although the claimant has the burden of establishing a severe impairment or impairments, the burden at this stage is not great.  *Caviness*, 250 F.3d at 605.

Although Plaintiff was diagnosed with hepatitis C, he has no history of seeking or receiving treatment during the relevant time period and his condition appears largely asymptomatic.  (Tr. 28, 59, 364).  Labs from Dr. Moss reveal slightly elevated SGOT/AST levels on August 29, 2005, and

October 4, 2005.  (Tr. 339-40).  Additionally, records from Gordonsville Clinic dated October 26, 2005, indicate that Plaintiff had nausea, vomiting, and diarrhea at that time.  (Tr. 348).  However, there is no medical evidence that Plaintiff experienced weight loss, malnutrition, chronic fatigue, recurrent nausea, vomiting, or abdominal pain.  Moreover, none of Plaintiff's treating physicians recommended antiviral medication or other treatment during the relevant time period.  In fact, other than referring to hepatitis C in Plaintiff's medical history, no physicians specifically addressed it in reference to any of Plaintiff's complaints.

Plaintiff's treatment for right shoulder pain is also sparse.  On April 21, 2006, Plaintiff complained of shoulder, lower back, and hip pain, for which he was taking Combunox.  (Tr. 344). On October 24, 2006, Plaintiff presented to Gordonsville Clinic with complaints of *left* shoulder pain, for which he requested a cortisone shot.  (Tr. 342).  Once the shot was drawn up, however, Plaintiff refused it.  *Id.*  Upon physical examination, on January 1, 2008, Dr. Westbrook noted that Plaintiff had full range of motion in his shoulders.  (Tr. 367).  Similarly, x-rays of Plaintiff's right shoulder were normal.  (Tr. 369).

As for Plaintiff's knee pain, he did not allege this impairment or seek treatment until April 10, 2008, nearly two years after his alleged onset date.  (Tr. 378-408).  Medical records dated April 10, 2008, from Sparks Regional Medical Center indicate minimal swelling and reduced range of motion in Plaintiff's left knee.  (Tr. 383).  X-rays of Plaintiff's left knee revealed an old healed fracture deformity of the proximal diaphysis of the left fibula, but no acute fracture or dislocation. (Tr. 399).  Plaintiff was assessed with knee pain of uncertain cause and given a prescription for Vicoprofen and a knee immobilizer.  (Tr. 395).  A week later, Plaintiff presented to Good Samaritan Clinic with complaints of left knee pain.  (Tr. 376).  Mild diffuse swelling and tenderness were

noted.  (Tr. 376).  Plaintiff was assessed with degenerative arthritis and given a Medral dose pack and Celebrex.  *Id.*  A follow-up appointment was scheduled, which Plaintiff failed to attend.  (Tr. 375).  There are no further records pertaining to Plaintiff's alleged knee pain.

Finally, although Plaintiff alleges headaches, numbness/tingling of his fingers, and depression, there are no records indicating that he sought or received treatment for these complaints at any point during the relevant time period.  (Tr. 205).

There is simply not enough evidence to show that these impairments, either singly or in combination, significantly limit Plaintiff's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  Plaintiff's treatment record concerning these alleged impairments is infrequent and inconsistent.  *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995) (failure to seek treatment may indicate the relative seriousness of a medical problem); *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (claimant's infrequent treatment record supported ALJ's determination that his impairments were non-severe).  Thus, after considering the evidence of record, we find that substantial evidence supports the ALJ's severity determination.

B.  Plaintiff's RFC

Plaintiff argues that the ALJ's RFC assessment has "no medical basis."  *See* Pl.'s Br. 9-11. We disagree.  At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC.  *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Masterson*, 363 F.3d at 737.  The Eighth Circuit has stated that "a claimant's residual

functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

The ALJ determined that Plaintiff retained the RFC to perform light work except that he can only occasionally balance, bend, stoop, crouch and climb stairs, never kneel, crawl, climb ladders, ropes or scaffolds and push/pull with his lower extremities, must alternate sitting and standing, and can tolerate only moderate exposure to workplace hazards.  (Tr. 60).

Significantly, no physician in this case, treating or non-treating, concluded that Plaintiff was unable to work. *See Johnston v. Apfel*, 210 F.3d 870, 873 (8th Cir. 2000) (no physician expressed any opinion that the claimant was disabled).  In fact, the only restrictions placed on Plaintiff by a treating physician pertained to Plaintiff's hip replacement surgery and were temporary in nature. (Tr. 300-10).  On August 18, 2006, six weeks post surgery, Dr. Terry cleared Plaintiff to return to work, but instructed him to alternate sitting/standing and refrain from lifting or bending for six weeks.  (Tr. 301).  At that time, Dr. Terry also noted a considerable decrease in Plaintiff's hip pain. *Id.*  At a three month check-up, Plaintiff was already working twenty hours per week and Dr. Terry noted no further limitations.  (Tr. 300).

Although Plaintiff contends he has disabling hip pain and would not have followed through with hip surgery given a second opportunity, there are no medical records after October 6, 2006, indicating that Plaintiff was treated for hip pain.  (Tr. 40).  Furthermore, although Plaintiff was referred to a specialist for his back pain, there is no evidence that Plaintiff ever made an appointment or saw Dr. Coffman.  (Tr. 300).

-10-

As for opinion evidence, Ronald Crow reviewed Plaintiff's medical records on August 12, 2007, and determined that Plaintiff could perform light work and had no postural, manipulative, visual, communicative, or environmental limitations.  (Tr. 358).   Additionally, upon physical examination, Dr. Westbrook noted that Plaintiff had 80 out of 100 degrees flexion in his right hip, but all other extremities were within normal limits.  (Tr. 267).   Range of motion in Plaintiff's cervical and lumbar spine was within normal limits and his straight-leg raising test was normal.  *Id.* There were no signs of muscle weakness or atrophy and gait and coordination were normal.  (Tr. 368).  Limb function was also within normal limits.  *Id.*  X-rays of Plaintiff's lumbar spine and right shoulder were normal.  (Tr. 369).  Based on his evaluation, Dr. Westbrook found no limitations in Plaintiff's ability to walk, stand, sit, lift, carry, handle, finger, see, hear or speak.  (Tr. 370).

The ALJ considered these consultative opinions but ultimately determined that, based on medical records and information obtained at the hearing, Plaintiff was more limited than originally thought.  (Tr. 63).  *Roberts v. Apfel,* 222 F.3d 466, 469 (8th Cir. 2000) (ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence). After considering all the relevant evidence, we conclude that substantial evidence supports the ALJ's RFC determination.  Plaintiff failed to demonstrate that he was unable to perform substantial gainful activity.  *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant").   Accordingly, substantial evidence supports the ALJ's RFC assessment.

C.  Plaintiff's Subjective Complaints

Plaintiff contends the ALJ failed to make express credibility determinations regarding his subjective allegations of pain.  *See* Pl.'s Br. 11-12.  We disagree.

-11-

When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Medhaug v.* Astrue, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.* A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

Plaintiff states that he suffers from disabling right hip, low back, leg, and right shoulder pain, headaches, and excessive fatigue. (Tr. 205). He helps his mother with dishes, laundry, feeding the pets, and mowing the yard. (Tr. 30-34, 199, 241). He takes Advil every once and a while for pain, but is taking any prescription medication. (Tr. 35). He cannot afford treatment because no one will insure him due to hepatitis C. (Tr. 207). His hepatitis C causes good and bad days, but more bad days than good. (Tr. 42). He can walk/stand for thirty to forty five minutes before he needs to sit down and can be on his feet no more than a couple of hours per day. (Tr. 36-37).

Contrary to Plaintiff's assertion, the ALJ dismissed his subjective complaints for legally sufficient reasons. The ALJ cited Plaintiff's lack of ongoing medical treatment, failure to take prescription pain medication, and daily activities (housework) as evidence that his limitations were not of disabling severity. (Tr. 62-63). *Davis v. Barnhart*, 197 Fed. Appx. 521, 522 (8th Cir. 2006)

-12-

(ALJ properly considered claimant's daily activities, medical records, and lack of treatment and prescription pain medication when discounting her subjective complaints).  Additionally, although Plaintiff stated he could not afford the cost of medication, he never applied for any medication assistance programs nor provided evidence that he sought treatment and was refused. (Tr. 16, 242). *See Clark v. Shalala*, 28 F.3d 828, 831 n. 4 (8th Cir. 1994) (ALJ properly discounted claimant's subjective complaints when he failed to provide evidence of refusal of services due to lack of financial resources).  In fact, Plaintiff's medical records indicate that he received treatment from Good Samaritan Clinic, a medical care facility for the uninsured.  (Tr. 375-76).  Treatment notes indicate that Plaintiff was scheduled for follow-up lab work on April 22, 2008, but failed to appear. (Tr. 375).

Here, the ALJ properly cited the *Polaski* factors and made express findings regarding Plaintiff's daily activities, the duration, frequency and intensity of his pain, and his treatment record. It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)).  Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted Plaintiff's subjective complaints.  For these reasons, substantial evidence supports the ALJ's decision to discredit Plaintiff's subjective complaints.

D. <u>Duty to Develop the Record</u>

Plaintiff contends the ALJ failed to develop the record concerning his physical impairments. *See* Pl.'s Br. 5-7.  The ALJ has a duty to fully and fairly develop the record, even if a claimant is

represented by counsel.  *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998).  "It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician.  *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000).  While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances."  *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)).  There is no bright-line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case by case basis.  *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

Under the circumstances of this case, the ALJ fulfilled his duty to fully and fairly develop the record.  We are cognizant that there is only one RFC in the transcript, which was completed by a non-treating physician.  *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (the assessment of a doctor who evaluates a claimant once or not at all does not usually constitute substantial evidence).  However, the record is wholly devoid of any evidence, from treating and non-treating physicians alike, that Plaintiff's physical limitations are of disabling severity.  Moreover, Plaintiff has demonstrated no prejudice or injustice as a result of this alleged failure to develop the record.  *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (unfairness or prejudice is necessary for a reversal due to failure to develop the record).  We find that sufficient evidence existed for the ALJ to make a fully-informed decision as to Plaintiff's alleged disability.  *Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005) (record contained sufficient evidence from which to make an informed decision).  Accordingly, the court finds that the ALJ satisfied his duty to fully develop the record.

-14-

V.    **Conclusion**

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed.  Accordingly, Plaintiff's complaint should be dismissed with prejudice.

ENTERED this 23rd day of July 2010.


/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE